E. T. RENFRO AND MRS. INEZ C. RENFRO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6138. Promulgated November 7, 1927.

1. Under the Revenue Act of 1918, liquidating dividends of a corporation received by an individual are subject to both normal and surtax.

2. Cost of assets and exhaustion thereof determined.

*A. W. Christian, Esq.,* for the petitioners.
*George G. Witter, Esq.,* for the respondent.

This proceeding arises from the determination by the Commissioner of deficiencies in income tax for the years 1920 and 1921 amounting to $2,741.93 in the case of E. T. Renfro and $2,725.93 in the case of Inez Renfro. The petitioners filed their community property returns for the taxable years involved and the deficiencies are computed by the Commissioner by dividing community income equally between the petitioners.

FINDINGS OF FACT.

1. Prior to May 4, 1920, E. T. Renfro owned two thirds of the capital stock of Renfro Drug Co., a Texas corporation. One L. N. Stanley owned the remaining one third. On May 4, 1920, a certificate of dissolution of said corporation was filed in the office of the Secretary of State of Texas. All of the assets of said corporation were taken over by Renfro and Stanley, subject to the debts of the corporation, and the business was thereafter operated by them as a partnership.

The paid-in capital of such corporation on March 1, 1913, and at the time of dissolution, was $10,000. The earned surplus of such corporation on March 1, 1913, was $16,886.64. The earned surplus of such corporation at the time of dissolution was $30,107.74. The Commissioner determined that the fair market value of the stock on March 1, 1913, was $26,886.64, that on dissolution the partners received assets of the value of $40,107.74, and that there has been a distribution in liquidation of $13,221.10. Two-thirds of this amount, $8,814.07, he included as income to the petitioners, subject to both surtax and normal tax.

2. During 1920 E. T. Renfro was a stockholder in E. T. Renfro Co., a corporation, and in Renfro Drug Co. No. 5, a corporation. During 1920, said Renfro withdrew from the E. T. Renfro Co. $9,800 in cash, which amount was debited to him on the books of said company, and during 1920 he withdrew from the Renfro Drug Co. No. 5, $9,000 in cash, which amount was debited to him on the books of said company. The stock of both of said corporations was

closely held and at the end of the year each stockholder's share of the earnings was credited to the individual. In 1920 there was credited to said Renfro on the books of the E. T. Renfro Co. $6,783.62, and on the books of the Renfro Drug. Co. No. 5 there was credited to said E. T. Renfro $5,922.85. The differences between the amounts withdrawn and the amounts credited were carried on the books of account of the two corporations as accounts receivable from said E. T. Renfro. In computing the deficiencies here in question the Commissioner has included said $9,800 and said $9,000 as dividends from the E. T. Renfro Co. and the Renfro Drug Co. No. 5, respectively.

3. Prior to April 20, 1920, one Eastham operated a drug store at 101 North Exchange Avenue, Fort Worth, Tex. On April 20, 1920, the petitioner, Renfro, and one Wrenn, as partners, purchased said business from Eastham, paying therefor $17,750. The petitioner had a two-thirds interest in said partnership. A lease which Eastham held upon the store in which such business was conducted was assigned to Renfro. Such lease provided for a rental of $200 per month and expired on December 31, 1920. It contained an option permitting the lessee to renew such lease at its termination for a period of three years at a rental of $225 per month. Prior to the expiration of the lease on December 31, 1920, the partnership exercised such option to renew. The rental reserved in such lease was a reasonable rental for said property for the term thereof and for the renewal term thereof.

The Commissioner determined that $6,699.50 of the purchase price should be allocated to furniture and fixtures, $6,050.50 to merchandise and $5,000 to the value of the lease. He further determined that such $5,000 should be exhausted over the life of the lease, including the renewal period, and computed the deficiencies accordingly.

The reasonable value of the furniture and fixtures purchased from Eastham was $6,699.50 and the reasonable value of the merchandise so purchased was $10,000.

4. For 10 or 11 years prior to 1920 the petitioner, either individually or in partnership, had conducted a drug store on the northwest corner of Main and 11th Streets in Fort Worth, Tex. He enjoyed a prosperous business at this store. The premises in which the business was conducted were occupied under a lease expiring in 1920, under which a rental of $350 a month was paid. Some three months before such lease expired the lessor notified Renfro that the rental would be advanced to $1,250 per month. The business could not be profitably operated at such an increased rental. There were no other available store properties in the same block. On March 13, 1920, Renfro and one Moseley, as partners, purchased the drug store business of one Reeves, paying therefor $38,303.46. The Reeves store

was at the other end of the same block, being on the southwest corner of Main and 10th Streets. Business had been initiated at this location by Reeves on April 15, 1915. The furniture and fixtures purchased from Reeves had a fair value of $8,829.13. The merchandise had a fair value of $10,000.

At the time of such purchase Reeves had a lease upon the store property for five years from May 1, 1915, to April 30, 1920, at a rental of $300 per month, containing an option to renew such lease for an additional five years at $350 per month. Such lease further provided against the assignment thereof without written consent of the lessor. Such lease was not properly executed under the laws of the State of Taxes and the original lessor was dead. Her heirs refused to consent to the assignment thereof. After some negotiations Renfro and Moseley paid $1,800 to such heirs and secured from them a consent to the assignment of the original lease and a renewal of said lease for a period of five years from May 1, 1920, at a rental of $350 per month, subject to the conditions and provisions of the original lease.

The Commissioner determined that $8,829.13 of the purchase price was paid for furniture and fixtures, that $10,000 was paid for merchandise and that $19,474.33 was paid for the lease. He further determined that the cost of such lease should be exhausted over the period thereof, including the renewal period, and computed the deficiencies accordingly. The petitioner, Renfro, had a three-fourths interest in the partnership purchasing such business.

5. During 1920 and 1921 the petitioner, Renfro, was a member of a partnership known as Bowers Oil Co. In determining the deficiencies the Commissioner allowed the petitioners deductions for the losses of such partnership of $311.62 for 1920 and $1,737.93 for 1921. During 1920 the petitioners sustained a loss of $1,659.60 by reason of their interest in such partnership and sustained no loss therefrom for the year 1921.

OPINION.

PHILLIPS: Five assignments of error were alleged, one of which was settled by stipulation at the hearing.

1. Counsel for the petitioners argues that the Commissioner erred in determining that any taxable gain resulted upon the dissolution of the corporation, Renfro Drug Co., and the taking over of its assets by the partnership and, in the alternative, contends that any gain which resulted constitutes a distribution of profits of the corporation accumulated subsequent to February 28, 1913, and therefore, is subject only to surtax. Upon the first point counsel urges that the interest of the petitioner in the assets as a partner was the same as the interest which he held as a stockholder; that he had nothing more after the dissolution of the corporation than he had before, and that

under the decision of the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189, no taxable gain or profit resulted. The distinction between the interest which the taxpayer had in the assets of the corporation before dissolution and the ownership which he enjoyed after dissolution and distribution thereof to the stockholders as partners seems so clear as to require no comment other than the citation of our decision in the *Appeal of E. C. Huffman*, 1 B. T. A. 52, where the legal question now urged was decided adversely to the contentions of the petitioner.

Whether the difference between the value of the assets distributed and the value of the capital stock on March 1, 1913, all of which is represented by earnings of the corporation accumulated subsequent to February 28, 1913, is subject to both surtax and normal tax or subject only to surtax depends upon the proper construction of subdivision (a), (b), and (c) of section 201 of the Revenue Act of 1918, and subdivision (a) of section 216 of that Act. We have heretofore had occasion to consider this question in the *Appeal of John K. Greenwood*, 1. B. T. A. 291, where it was held that liquidating dividends were subject to both normal and surtax under these provisions of the Revenue Act of 1918. Since that decision was adopted, the Circuit Court of Appeals of the Sixth Circuit in *Langstaff* v. *Lucas*, 13 Fed. (2d) 1022; 5 Am. Fed. Tax Rep. 6125, has reached the same conclusion. The Circuit Court of Appeals of the Eighth Circuit in *Hellmich* v. *Hellman*, 18 Fed. (2d) 239; 6 Am. Fed. Tax Rep. 6633, has recently reached an opposite conclusion. Certiorari has been granted and this case is now pending before the United States Supreme Court. The petitioners reside in neither of these circuits. After a careful consideration of the decisions of the District and Circuit Courts in these cases we reach the same conclusion that we did in our previous decision cited above and hold such liquidating dividends to be subject to both normal and surtax.

2. During 1920 petitioner, E. T. Renfro, was a stockholder of the E. T. Renfro Co. and Renfro Drug Co. No. 5, both corporations. During that year he withdrew $9,800 from the first corporation and $9,000 from the second corporation, all of which amounts the Commissioner has treated as dividends. It appears that the stock of such corporations was closely held and that the stockholders treated them substantially as partnerships. No formal declaration of dividends appears to have taken place, the profits for the year being credited to the stockholders without any such formal action. All amounts withdrawn in excess of the earnings were carried forward as accounts receivable. In such circumstances we are of the opinion that the Commissioner was in error in treating as dividends any amount in excess of that credited to Renfro. See *Appeal of Albert Bettens*, 2 B. T. A. 535, and *Appeal of Kate C. Ryan, Executrix*, 2 B. T. A. 1130.

3. In 1920 Renfro and a partner purchased the drug store business then being conducted by one Eastham. Upon such purchase they received furniture and fixtures which both parties to this proceeding value at $6,699.50, the stock in trade, and a lease. The petitioners allocated the difference between the purchase price and the value of the furniture and fixtures $11,050.50, to cost of merchandise. The Commissioner determined that the lease had a value of $5,000 and allocated only $6,050.50 to cost of merchandise. The testimony discloses that the merchandise in stock was of the reasonable value of $10,000. We are satisfied from the testimony that the lease as such had no fair market value and also that the business conducted by Eastham, which had been in operation for only one or two years, had no good-will value. The problem is to determine the proper treatment to be accorded to the difference between the price paid and the value of the tangible assets.

. Through various corporations and partnerships the petitioner was conducting a chain of drug stores in Fort Worth in the year 1920. It would seem that he was desirous of locating one of his stores in the neighborhood in which Eastham was located. His willingness to pay for such business an amount in excess of the value of the furniture, fixtures and merchandise is not to be attributed either to any good will acquired from Eastham or to any inherent value in the lease, but rather to this desire to locate a store in this neighborhood. The Eastham Pharmacy appears to have been suitably located. The price paid for the Eastham Pharmacy was arrived at by negotiations between the parties in which no particular value was assigned to any of the assets of the business and it is, therefore, impossible to determine what factor it was that caused the partners to pay an amount in excess of the value of the tangible assets unless it be a value attached to location, their assumption being that they could pay such price and still conduct the business at a profit. Such value may exist independently of any value in the lease itself, yet may bear a definite relationship to the lease, for without the lease the value of the location ceased. The Commissioner has determined that that amount of the purchase price in excess of the value of furniture and fixtures and stock in trade should be exhausted ratably over the period of the lease, including the renewal period. We are satisfied that this is a proper period over which to permit the partners to recover such amount, for during the period of the lease they were sure of the opportunity of conducting their business in this location. The computation of income must be adjusted, however, to reflect the changed amounts.

4. For several years prior to 1920 the petitioner, Renfro, had been conducting a drug store at the corner of Main and 11th Streets in Fort Worth. The lease expired in 1920 and the demands of the

lessor for a renewal thereof were such that the business could not be profitably operated. The petitioner was faced with the necessity of securing another location nearby, or losing a valuable business. On the corner at the other end of the same block of Main Street was a pharmacy which had been in operation some five years. This business the petitioner and his partner purchased, paying therefor $38,333.46. Of the purchase price the Commissioner has assigned $8,829.13 to furniture and fixtures and $10,000 to merchandise. The value assigned to furniture and fixtures is not disputed by the petitioners and there is no evidence before us which would indicate that the merchandise had a value different from that assigned to it by the Commissioner. The balance of the purchase price, $19,474.33, the Commissioner determined to be the purchase price of the lease and held that this amount should be recovered by the petitioner as deductions from income over the period thereof, including the renewal period.

At the time the business was purchased the original term of the lease had only one month to run. The lease, however, contained an option providing for a five-year renewal. It is evident that if the lease had any substantial value it was because of the renewal privilege and if the Commissioner is correct in his determination of the value thereof, such value must properly be exhausted over the full period, including the renewal term. It is contended by the petitioners, however, that such lease was not properly executed, was void, and was, therefore, of no value, and that it was only by virtue of a new lease subsequently negotiated at a cost of $1,800 paid to the heirs of the original lessor that the petitioner continued to occupy the store. Whether the lease was void, voidable, or valid seems to us immaterial, for it does not appear that any question as to its validity was ever raised by the heirs of the lessor. The lease covenanted against assignment without consent of the lessor. This consent the heirs of the lessor refused to give without the payment of a bonus. Such bonus was paid to them and they executed an agreement consenting to the assignment of the original lease and renewing the same for a period of five years. The transaction with the heirs of the original lessor did not result in a new lease, as contended by the petitioners, but merely in a consent to the assignment and renewal of the old lease. In such circumstances there is no validity in the contention that the petitioner did not secure the benefits of the lease which he purchased and is entitled to deduct the cost as a loss in 1920.

There might be some question whether the amount paid for the Reeves business in excess of the value of the tangible assets should properly be assigned to the lease, or is made up in part of a value attaching to the lease, in part by the desire to preserve the good will of the business which the petitioner had built up, and in part

by the desire to eliminate a competitor. The Commissioner, however, has assigned the full amount to the value of the lease and, while at the hearing his counsel questioned the soundness thereof, the record is not sufficient to permit us to make any other allocation than that made by the Commissioner. For this reason we must approve the action taken by him in allocating the cost of the business purchased from Reeves and in exhausting the portion of such cost which can not be assigned to the cost of tangible assets.

5. The findings of fact with respect to the loss arising from the operation of the Bowers Oil Co. was made in accordance with the stipulation of the parties.

Reviewed by the Board.

*Decision will be entered on 20 days' notice, under Rule 50.*